UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                                  Case # 19-CR-6131-FPG

v.

                                                  DECISION AND ORDER

RICHARD DZIONARA-NORSEN,

                          Defendant.

## INTRODUCTION

Defendant Richard Dzionara-Norsen moved to dismiss his indictment and to suppress tangible evidence and statements. ECF Nos. 47, 59, 66. Defendant also seeks *in camera* review of grand jury materials. ECF No. 59. On April 17, 2020, United States Magistrate Judge Marian W. Payson issued a Report and Recommendation ("R&R") recommending that the Court deny Defendant's motions. ECF No. 68. Currently before the Court are Defendant's objections to the R&R. ECF No. 69. For the following reasons, the Court ADOPTS Judge Payson's R&R in full. Defendant's motions are DENIED.

## BACKGROUND

On August 8, 2019, the grand jury returned a three-count indictment charging Defendant with various offenses relating to receiving, possessing, and distributing child pornography. ECF No. 42. Judge Payson held an evidentiary hearing on Defendant's motions to suppress on December 18, 2019. ECF Nos. 56, 57. At the evidentiary hearing, Federal Bureau of Investigation Special Agents Barry Couch and James Markovich testified. ECF No. 57. Defendant did not call any witnesses at the evidentiary hearing. *Id.*

As part of an online child pornography investigation, an undercover FBI officer allegedly obtained a video depicting child pornography from someone using an IP address associated with Defendant. *Id.* at 5, 19. On June 13, 2018, Couch and his partner, Task Force Officer Carlton Turner, interviewed Defendant outside his apartment. *Id.* at 5–6. On that day, Couch and Turner approached Defendant's apartment wearing plain clothes and knocked on his door unannounced. *Id.* at 6, 11, 34. Defendant answered the door after Couch knocked twice, and Couch introduced himself and Turner. *Id.* at 6, 9–11, 35. Defendant exited his apartment to speak with them. *Id.* at 9–11. Couch recorded their conversation using a concealed digital recorder. *Id.* at 13. The interview lasted less than eighteen minutes. *Id.* at 12, Ex.[1] 3.

During the course of the interview, Couch showed Defendant a screenshot of a scene from the video allegedly depicting child pornography. *Id.* at 18. The screenshot allegedly featured a prepubescent girl in a lewd pose. *Id.* Defendant revealed that he had previously downloaded child pornography using his laptop. *Id.* at 46, Ex. 3. Couch asked Defendant if he still had his laptop and if he was willing to show them the laptop. *Id.* at 52–54, Ex. 3. Defendant agreed to show them the laptop and went back into his apartment to retrieve it. *Id.* at 20, Ex. 3. After Defendant retrieved the laptop, Couch told the Defendant that they intended to take it. *Id.* at 21–22, 53–54. After taking the laptop, Couch drafted a document stating that Defendant gave "the FBI consent to search [his] Dell laptop computer for evidence of any crime," read the form to Defendant, and had Defendant sign the form. *Id.* at 22–24, 45–46, Exs. 3, 5.

After Couch and Turner finished the interview they left, and Defendant stayed at his apartment. *Id.* at 24. Couch called Defendant twice after leaving his apartment: first, to ask Defendant to provide the password for his laptop, which he did; and second, to ask if Defendant

---

[1] "Ex." refers to Government exhibits admitted at the evidentiary hearing.

would be willing to sit for a polygraph examination. *Id.* at 24–26. Defendant agreed to participate in the polygraph examination at the FBI's office on the following day. *Id.*

The next morning, Couch met Defendant in the lobby of the FBI's office and introduced him to Markovich. *Id.* at 27–28. Markovich is trained as a polygraph examiner, and he conducted the polygraph examination in a nearby, windowless room connected to the lobby while Couch observed. *Id.* at 26–29, 31, 62–64. Markovich told the Defendant that he was not under arrest and that he was free to go at any time. *Id.* at 68–70. Markovich also read Defendant a *Miranda* warning from a form, which Defendant signed. *Id.* at 71–72. During the course of the polygraph, Defendant was not restrained in any way. *Id.* at 68–69. The examination lasted less than three hours. *Id.* at 70. The interview was conducted in a "cordial," "even keeled tone." *Id.* at 81. Defendant was not arrested and left on his own. *Id.* at 28, 69.

Defendant's computer was also searched for evidence of child pornography. *Id.* at 33. The Government never obtained a warrant for either the seizure or the search of the laptop. *Id.* at 55–56.

## LEGAL STANDARD

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R, a party's objections are conclusory, general, or without legal support, or a party repeats arguments made to the magistrate judge without identifying a specific error in the judge's reasoning, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009); *see also* Fed. R. Crim. P. 59(b)(2); Loc. R. Crim. P. 59(c)(2) ("Written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be

supported by legal authority."); *Alvarez Sosa v. Barr*, 369 F. Supp. 3d 492, 497 (E.D.N.Y. 2019)

("[O]bjections that simply reiterate the original arguments, without identifying a specific error in

the report and recommendation, *e.g.*, why a specific finding or conclusion is faulty or the

magistrate judge erred in rejecting a specific argument, are reviewed under the clear error

standard."). After reviewing the R&R and the objections to it, a district court "may accept, reject,

or modify," in whole or in part, the findings or recommendations made by the magistrate judge.

Fed. R. Crim. P. 59(b)(3).

## DISCUSSION

Defendant argues that Judge Payson erred in finding (1) that *in camera* review of the grand

jury minutes was not warranted; (2) that the indictment should not be dismissed based on either

insufficiency of evidence or selective prosecution; and (3) that suppression was not warranted.

ECF No. 68 at 9–32; ECF No. 69. With respect to many of his arguments, Defendant has not

specifically addressed flaws in Judge Payson's reasoning, but instead has reasserted the same

arguments he initially made to Judge Payson or has asserted arguments without legal support.

Under such circumstances, Defendant is entitled only to clear error review. *Alvarez Sosa*, 369 F.

Supp. 3d at 497. Even assuming that Defendant were entitled to *de novo* review on all objections

he raised to the R&R, the Court would still adopt Judge Payson's R&R.

## I.      Grand Jury Materials

Defendant argues that Judge Payson erred in failing to permit *in camera* review of the

grand jury minutes in this matter. ECF No. 69 at 1–2. Defendant argues that this is a case in which

"it is particularly important" (1) that the grand jurors were properly instructed and (2) that they

actually viewed the video in question. *Id.*

Grand jury proceedings carry a "presumption of regularity." *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974) (internal quotation marks omitted). As such, "a review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990), *overruled on other grounds as recognized by*, *United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010). This standard is a demanding one, and the "strong presumption of regularity in grand jury proceedings . . . cannot be outweighed by conclusory or speculative allegations of misconduct." *United States v. Morgan*, 845 F. Supp. 934, 941 (D. Conn. 1994), *aff'd*, 51 F.3d 1105 (2d Cir. 1995). Even where a Defendant merely requests *in camera* review of grand jury minutes, courts still require particularized factual allegations of government misconduct. *United States v. Smith*, 105 F. Supp. 3d 255, 261 (W.D.N.Y. 2015) (collecting cases).

Defendant first argues that, because Couch was unable to testify as to the exact age of the individual depicted in the video in question, it is "possible" the person depicted is not a minor. ECF No. 69 at 1–2. In such a scenario, Defendant argues, it is particularly important that the grand jurors be instructed properly. *Id.* Beyond speculation, Defendant has provided no basis to question the grand jurors' instructions in this case. "Unspecified allegations of impropriety or mere speculation are not sufficient to satisfy [Defendant's] heavy burden." *United States v. Ali*, No. 12-CR-45, 2013 WL 707303, at *4 (W.D.N.Y. Feb. 26, 2013) (citing *United States v. Calandra*, 414 U.S. 338, 345 (1974)).

Defendant next claims that, because it is possible the individual depicted in the video is not a minor, the grand jurors needed to actually view the video. ECF No. 69 at 1–2. Defendant argues it would be improper for the grand jurors to rely on the testimony of Couch regarding his belief that the individual was a minor. *Id.* at 2. As a threshold matter, the Defendant has failed to produce

any evidence of what actually transpired before the grand jury. Even if the Court were to assume that the grand jury did not view the video and that the video could have been viewed as exculpatory, however, Defendant has not established that the grand jury could not rely on the testimony of Couch instead of viewing the video directly.

In fact, the grand jury's reliance on Couch's testimony would be permissible. *United States v. Williams*, 504 U.S. 36, 52–53 (1992) ("[T]he suspect under investigation by the grand jury [has n]ever been thought to have a right . . . to have exculpatory evidence presented. . . . [T]he 'common law' of the grand jury is not violated if the grand jury itself chooses to hear no more evidence than that which suffices to convince it an indictment is proper."); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959) (noting grand jury "indictments may be returned on hearsay"). And, even assuming Couch's testimony was unreliable, "the mere fact that evidence [presented to a grand jury] . . . is unreliable is not sufficient to require a dismissal of the indictment." *Bank of N.S. v. United States*, 487 U.S. 250, 261 (1988)); *see also Costello v. United States*, 350 U.S. 359, 362–63 (1956) ("No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof." (internal quotation marks omitted)) Accordingly, *in camera* review of the grand jury minutes would serve no purpose. *See United States v. Mullen*, 243 F.R.D. 54, 65–66 (W.D.N.Y. 2006) (denying *in camera* review of testimony presented to grand jury where government allegedly presented only an agent's interpretation of an allegedly incriminating conversation instead of the full conversation). Defendant's application for *in camera* review of the grand jury minutes is denied.

## II.     Dismissal

### A.       *Selective Prosecution*

Defendant argues that the indictment should be dismissed based on selective prosecution or, in the alternative, he should be granted discovery regarding his selective prosecution theory. ECF No. 69 at 2–3. Defendant argues that his prosecution was selective because similarly situated individuals are either not prosecuted or are prosecuted by New York State, not the Federal Government. *Id.* Although Defendant alleges that his prosecution was "discriminatory," he does not allege why the Government discriminated against him—his allegations are based entirely on his contention that similarly situated individuals are not prosecuted by the Government. *Id.*

"To make out a claim of selective prosecution, a defendant confronts a deliberately 'rigorous standard,' . . . he must provide 'clear evidence' that the prosecutorial decision or policy in question had both 'a discriminatory effect and . . . was motivated by a discriminatory purpose.'" *United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003) (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). "A defendant seeking to show discriminatory purpose must show 'that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.'" *Id.* (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)). Defendant has not identified the discriminatory purpose at issue here (*i.e.*, why he was discriminated against), and accordingly, his selective prosecution claim must fail.

Defendant cites *Armstrong* for the proposition that he should be granted discovery. 517 U.S. at 470. In *Armstrong*, the Supreme Court examined when discovery should be granted for "a claim that the prosecuting attorney singled . . . out [the defendant] for prosecution on the basis of his race." *Id.* at 458. The Supreme Court adopted a standard lesser than that required to prevail on the merits of a racial selective prosecution claim but the standard is still "correspondingly

rigorous." *Id.* at 468. To be granted discovery, a defendant must produce "some evidence tending

to show the existence of . . . discriminatory effect and discriminatory intent." *Id.* (internal quotation

marks omitted). Here, even assuming Defendant has met his burden to show some evidence of

"different treatment of similarly situated persons,"[2] Defendant has not even speculated as to the

motivation for the alleged prosecutorial discrimination. ECF No. 69 at 2–3. Defendant has

accordingly produced no evidence of discriminatory intent and his request for discovery must be

denied.

### B.      *Insufficient Evidence*

Defendant also argues that the indictment should be dismissed based on the insufficiency

of the Government's evidence. ECF No. 69 at 3–4. Defendant posits that the indictment is based

entirely on the video and that the Government has not established that the video depicts child

pornography. *Id.* As discussed in more detail by Judge Payson, there is evidence that the video

features a prepubescent female and Defendant's indictment is based on more than just the video.

ECF No. 68 at 10. However, even accepting Defendant's arguments that the indictment is based

entirely on the video and the Government has not established that it depicts child pornography,

Defendant has cited no authority that dismissal of the indictment would be proper at this stage.

---

[2] The Court doubts that Defendant has met this burden here. In *Armstrong*, respondents failed to meet their burden because they did not "identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted." 517 U.S. at 470. The Supreme Court specifically rejected reliance on hearsay statements and "personal conclusions based on anecdotal evidence." *Id.* Defendant relies on the affidavit of his attorney who states that he "has represented criminal defendants in state court where he was informed that the U.S. Attorney's Office declined to prosecute because, among other things, the number of images did not warrant a federal prosecution" and he "has spoken to other attorneys who . . . have had similar experiences." ECF No. 59 ¶¶ 42, 43. These statements are nothing more than hearsay. Further, Defendant cites a Sentencing Commission study that refers to the number of individuals that received certain sentencing enhancements. *Id.* ¶ 46. Even assuming these sentencing enhancements would be inapplicable to the Defendant—a fact the Government appears to dispute, *see* ECF No. 72 at 4—the statistics do not show that similarly situated individuals were not prosecuted. The cited statistics only show that a majority of *convicted* criminal defendants face enhancements greater than the Defendant here.

ECF No. 69 at 3–4. A facially valid indictment cannot be dismissed based on insufficient evidence. *Williams*, 504 U.S. at 54 ("[I]t would run counter to the whole history of the grand jury institution to permit an indictment to be challenged on the ground that there was inadequate or incompetent evidence before the grand jury." (internal quotation marks omitted)). Accordingly, Defendant's motion to dismiss for insufficient evidence must be denied.

## III.   Suppression

### A.   *Defendant's Statements on July 13th and 14th*

Defendant argues that the statements he made on July 13th outside his apartment were made during a custodial interrogation. ECF No. 69 at 4–5. If Defendant's statements were made while in custody, the statements would be subject to suppression because he was not provided appropriate warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). ECF No. 57 at 12, 49. "[A]n individual is in custody only if two conditions are met: (1) a reasonable person would have thought he was [not] free to leave the police encounter at issue and (2) a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *United States v. Schaffer*, 851 F.3d 166, 173 (2d Cir. 2017) (second alteration in original and internal quotation marks omitted). "[T]he ultimate inquiry is whether a reasonable person would have understood the law enforcement agents' restraint on his freedom to equal the degree associated with a formal arrest." *Id.* (internal quotation marks omitted)

Defendant argues that he was in custody because a reasonable person in his position would have considered themselves to be in custody. ECF No. 69 at 4–5. Defendant cites *Yarborough v. Alvarado*, but in that case, the Supreme Court identified multiple factors that here support Judge Payson's finding. 541 U.S. 652, 664–65 (2004) (noting that Alvarado was not transported to the police station by police, was not threatened, was not told he would be placed under arrest, there

were indications that the interview would be brief, and he was not arrested after the interview). To determine whether a suspect is in custody, courts should consider a variety of factors, including:

> (1) the interrogation's duration; (2) its location (*e.g.*, at the suspect's home, in public, in a police station, or at the border); (3) whether the suspect volunteered for the interview; (4) whether the officers used restraints; (5) whether weapons were present and especially whether they were drawn; and (6) whether officers told the suspect he was free to leave or under suspicion.

*Schaffer*, 851 F.3d at 173–74.

In this case, no reasonable person could have believed the restraint on Defendant's freedom was equal to "the degree associated with a formal arrest." *Id.* at 173 (internal quotation marks omitted). Couch and Turner wore plain clothes and did not display handcuffs, badges, or weapons. ECF No. 57 at 11–12. Defendant was never physically restrained at any point during the encounter. *Id.* Defendant spoke to Couch and Turner just outside his apartment door in a conversational tone. *Id.* at 9–11, Ex. 3. Couch and Turner never made any threats or promises. *Id.* at 12. Defendant never asked for an attorney or asked to stop speaking during the interview. *Id.* The entire encounter lasted less than eighteen minutes. *Id.* at Ex. 3. Defendant reentered his apartment twice during the interview and voluntarily returned outside without any action by Couch or Turner. *Id.* at 19–21. Defendant even invited Couch and Turner into his apartment. *Id.* at 19. They declined the invitation and continued the interview outside the apartment. *Id.* Defendant also had enough space to walk away from the apartment, past Couch and Turner. *Id.* at 36. At the conclusion of the interview, Defendant was not arrested. *Id.* at 24.

Under these circumstances, the Court cannot find that Defendant was in custody pursuant to *Miranda*. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam) ("[T]here is no indication that the questioning took place in a context where respondent's freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately

10

informed that he was not under arrest. At the close of a ½-hour interview respondent did in fact leave the police station without hindrance. It is clear from these facts that Mathiason was not in custody."); *United States v. Faux*, 828 F.3d 130, 135–36 (2d Cir. 2016) ("[C]ourts rarely conclude, absent a formal arrest, that a suspect questioned in h[is] own home is 'in custody.'" (collecting cases)); *United States v. Akapo*, 420 F. App'x 42, 44 (2d Cir. 2011) (summary order) (holding that defendant was not in custody where he was asked to stand near the doorway to his apartment as three agents searched his apartment, he was interviewed just outside of his apartment, he was not handcuffed or frisked, he never asked to leave, and he was not told he could not leave).

Defendant notes that he suffers from autism and other physical and mental issues, and he argues he was medicated on July 13th. ECF No. 69 at 4–5. At the time of the interview, Couch was aware of a prior "mental hygiene situation" in which the Brighton Police Department responded to a call involving Defendant. ECF No. 57 at 38–39. Defendant had damaged some property at his mother's home. *Id.* Although it is unclear what exactly Couch knew at the time of the interview, it appears as though Defendant has had suicidal ideations, anxiety, and depression. *Id.* at 39–40. Regardless of the severity of Defendant's mental health issues, Defendant's individual characteristics are not applicable to the custody analysis. *J.D.B. v. North Carolina*, 564 U.S. 261, 271 (2011) ("By limiting analysis to the objective circumstances of the interrogation, and asking how a reasonable person in the suspect's position would understand his freedom to terminate questioning and leave, the objective test avoids burdening police with the task of anticipating the idiosyncrasies of every individual suspect and divining how those particular traits affect each person's subjective state of mind."); *see also Alvarado*, 541 U.S. at 668 (holding that officers are under no duty "to consider . . . contingent psychological factors when deciding when suspects should be advised of their *Miranda* rights").

Defendant argues that Couch ambushed him at his home and lied repeatedly by saying Defendant was not a target and by downplaying the significance of the investigation. ECF No. 69 at 4–5; ECF No. 66 ¶ 37; ECF No. 59 ¶¶ 71, 72. Couch told Defendant that they typically deal with things that are more important. ECF No. 57 at 48. Couch also told Defendant that they wanted "to make sure [he was] not somebody that [they] need[ed] to be concerned about or [a] target." *Id.* at 49–52. Defendant, however, was a target at the time. *Id.* Couch also told Defendant he just wanted to make sure Defendant got some counseling. ECF No. 59 ¶ 71. To the extent these statements amount to misrepresentations, however, they do not support Defendant's argument; a reasonable person would be less likely to consider themselves in custody after hearing they are not the target of an investigation. Although the unannounced nature of the visit might weigh in favor of finding that the interrogation was custodial, it does not outweigh the numerous other factors weighing against such a finding. Accordingly, the interview was not custodial in nature.

Judge Payson also concluded that Defendant's "statements were voluntary and not coerced." ECF No. 68 at 16. Defendant argues that the combination of his mental impairments and Couch's "trickery and repeated lies" render his statements involuntary. ECF No. 69 at 5.

In evaluating voluntariness, the Court is to examine the totality of the circumstances in which the statements were given. *Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1988). "The test of voluntariness of a confession is whether all the relevant circumstances show that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined." *United States v. Tutino*, 883 F.2d 1125, 1138 (2d Cir. 1989) (alteration in original and internal quotation marks omitted). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Even where government agents' "statements were false, misleading, or

intended to trick and cajole the defendant into confessing, specific findings must be made that under the totality of the circumstances—considering the [accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials]—the defendant's will was overborne by the agent's conduct." *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991).

Judge Payson's R&R thoroughly examines the voluntariness of the statements Defendant made on July 13th. Defendant attempts to rebut Judge Payson's well-supported conclusion by distinguishing several of the cases cited in the R&R, but he cites no contrary authority in support of his argument. ECF No. 69 at 4–5. Although Couch's misleading statements regarding the significance of the interview and Defendant's mental health status weigh in favor of Defendant's argument, *see United States v. Guzman*, 724 F. Supp. 2d 434, 441–42 (S.D.N.Y. 2010) ("Account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 229 (1973))), these factors are far outweighed by the myriad factors supporting the contrary conclusion: Defendant was not in custody; the interview was brief and the parties maintained a conversational tone throughout; and Couch and Turner wore plain clothes, did not make threats or promises, and did not display handcuffs, badges, or weapons. ECF No. 57 at 11–12, Ex. 3; *see Guzman*, 724 F. Supp. 2d at 442 (noting that whether the defendant was in custody or subject to a show of force are relevant voluntariness considerations). Under the circumstances, the Court cannot conclude that Defendant's "will was overborne by" Couch's and Turner's conduct. *Haak*, 884 F.3d at 409.

The statements Defendant made on July 14th were made subsequent to a *Miranda* warning. Defendant accordingly only argues that his statements were tainted by the Government's improper conduct on July 13th. ECF No. 69 at 5. Because the Court finds that the July 13th statements were

not made during a custodial interrogation and were voluntarily made, the Court need not address Defendant's fruit of the poisonous tree argument. Defendant's motion to suppress the statements he made on July 13th and 14th is denied.

        *B.*      *Search and Seizure of Laptop*

Defendant finally argues that his laptop was unlawfully seized and searched without a warrant. ECF No. 69 at 5–6. The Government argues that the warrantless seizure was permissible because Couch had probable cause to believe the laptop contained evidence of a crime and that seizure was necessary to preserve such evidence. ECF No. 63 ¶ 47; ECF No. 67 at 2–6. "[S]eizure of personal property [i]s *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant." *United States v. Place*, 462 U.S. 696, 701 (1983). However, if "law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant" the Fourth Amendment permits "seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it." *Id.*; *United States v. Moreno*, 701 F.3d 64, 72–73 (2d Cir. 2012) ("[T]he warrant requirement of the Fourth Amendment must yield in those situations in which exigent circumstances require law enforcement officers to act without delay." (internal quotation marks omitted)).

Defendant does not challenge Judge Payson's well-supported conclusion that Couch had probable cause to believe the laptop contained evidence of a crime. ECF No. 68 at 21; ECF No. 69 at 5–6. Given that the Defendant admitted that he had used the laptop to view child pornography previously, it appears beyond dispute that Couch had such probable cause. ECF No. 57 at Ex. 3; *see United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) ("Because it is well known that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes, evidence that such persons possessed child pornography in the past

supports a reasonable inference that they retain those images—or have obtained new ones—in the present." (internal quotation marks omitted)).

Defendant instead argues that the Government failed to prove that an exigent circumstance necessitated the warrantless seizure of the computer because there was no evidence anything on the computer would be destroyed. ECF No. 69 at 5–6. Courts routinely recognize the ease of destroying digital evidence in child pornography cases. *United States v. Blood*, 429 F. App'x 670, 671 (9th Cir. 2011); *United States v. Diaz*, 435 F. App'x 329, 332 (5th Cir. 2011). Further, Defendant's knowledge of Couch's investigation raises the likelihood that he might try to destroy any evidence of his alleged crimes. *United States v. Bradley*, 488 F. App'x 99, 103 (6th Cir. 2012) ("Courts have doubted the wisdom of leaving the owner of easily-destructible contraband in possession of that contraband once the owner is aware that law-enforcement agents are seeking a search warrant. . . . Had [the agent] left the laptop in [defendant]'s possession, [defendant] could have attempted to destroy any computer files or the laptop itself."); *see also Diaz*, 435 F. App'x at 332 (discussing heightened need to protect easily destructible evidence where defendant was aware of federal agents' investigation); *cf. United States v. Santa*, 236 F.3d 662, 669–70 (11th Cir. 2000) ("It is well settled that circumstances are not normally considered exigent where the suspects are unaware of police surveillance." (internal alterations and quotation marks omitted)). Under the totality of the circumstances, Couch's conduct in seizing the laptop was reasonable.

Defendant next argues that Judge Payson erroneously found that the consent he provided Couch to search the laptop was voluntary. ECF No. 69 at 5–6. Defendant again argues that the circumstances of the July 13th encounter—particularly his mental health issues, the medications he was taking, and Couch's conduct in showing up to the apartment unannounced and making misrepresentations—render his consent involuntary. *Id.*

It is well settled that the Government needs neither probable cause nor a warrant if "a search . . . is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Defendant's consent to waive his Fourth Amendment rights need only be "voluntarily given, and not the result of duress or coercion, express or implied." *Id.* at 248. Like the voluntariness inquiry discussed above with respect to the statements made by Defendant on July 13th, the Court must examine the totality of the circumstances. *Id.* at 248–49.

The Court rejects Defendant's arguments for the same reasons discussed above and in Judge Payson's well-reasoned R&R. ECF No. 68 at 24–28. The factors cited by Defendant do not outweigh the multitude of factors marshalled by the Government supporting a finding of voluntariness. *See United States v. Barrett*, 750 F. App'x 19, 21–22 (2d Cir. 2018) (summary order) (holding that district court properly found consent was voluntarily given where police stopped defendant's vehicle, had guns drawn, handcuffed and frisked defendant, did not read defendant his *Miranda* rights, and questioned defendant for over six hours at the police precinct because those factors were outweighed by other factors: police told defendant he was not under arrest; defendant was not arrested; defendant was not handcuffed when he gave consent; defendant was calm and cooperative; and defendant was offered food, drink, and accommodation in making child care arrangements). Accordingly, Defendant's consent to the search was voluntarily given and the Court denies his motion to exclude evidence obtained from the search of the laptop.

The Court has reviewed the remainder of Judge Payson's R&R for clear error and has found none.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS Judge Payson's R&R, ECF No. 68. Defendant's motion to dismiss his indictment, ECF No. 59, motion to suppress tangible evidence

and statements, ECF Nos. 47, 59, 66, and application for *in camera* review of grand jury materials,

ECF No. 59, are DENIED.

IT IS SO ORDERED.

Dated: June 18, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court