UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD DZIONARA-NORSEN,

                              Petitioner,                 19-CR-6131-FPG
                                                   25-CV-6617-FPG

v.

                                                        DECISION AND ORDER

UNITED STATES OF AMERICA,

                              Respondent.

## INTRODUCTION

On February 22, 2021, this Court entered judgment against Petitioner Richard Dzionara-Norsen, after a trial in which Petitioner was found guilty of Distribution of Child Pornography, Receipt or Attempted Receipt of Child Pornography, and Possession or Attempted Possession of Child Pornography. ECF Nos. 144, 156. The Second Circuit affirmed the judgment. *See* ECF No. 178. Currently before the Court is Petitioner's motion to vacate his convictions under 28 U.S.C. § 2255. ECF No. 236. The government opposes the motion. ECF No. 242. For the reasons stated herein, Petitioner's motion is DENIED.

## BACKGROUND

The Court assumes the parties' familiarity with the factual background of this case and will therefore only briefly summarize the facts relevant to this motion. On August 20, 2018, Petitioner was charged by criminal complaint with Distribution and Attempted Distribution of Child Pornography and Possession and Attempted Possession of Child Pornography. ECF No. 1. While Petitioner initially indicated that he intended to enter a plea of guilty, he ultimately elected to proceed to trial, and on August 8, 2019, he was indicted on three counts: (1) Distribution and Attempted Distribution of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A), 2252A(b)(1); (2) Receipt and Attempted Receipt of Child Pornography in violation of 18 U.S.C.

1

§§ 2252A(a)(2)(A), 2252A(b)(1); and (3) Possession and Attempted Possession of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2). ECF No. 42.

Pretrial motions were argued before United States Magistrate Judge Marian W. Payson. ECF Nos. 47, 54, 56, 59, 65. As relevant here, Petitioner's attorney moved to suppress statements made by Petitioner on June 13, 2018, and on June 14, 2018. ECF Nos. 47, 59, 73. Specifically, Petitioner's attorney, David Pilato, argued that the statements made on June 13, 2018, must be suppressed because Petitioner was not advised of his *Miranda* rights and because the statements were involuntary due to Petitioner's mental health issues, which he argued demonstrated a diminished capacity. ECF No. 73 at 6–7. Mr. Pilato also argued that the statements made on June 14, 2018, must be suppressed because even if Petitioner received *Miranda* warnings on June 14, the statements made that day were "tainted by the government's failure on June 13." ECF No. 59 at 10. Additionally, Mr. Pilato argued that tangible evidence from Petitioner's laptop must be suppressed because Petitioner's consent to search the laptop was not voluntary given the circumstances and in light of Petitioner's mental illness. ECF No. 47 at 7.

On April 17, 2020, Judge Payson issued a Report and Recommendation recommending that Petitioner's motions to suppress statements and tangible evidence be denied. ECF No. 68. Judge Payson concluded that Petitioner was not in custody during the June 13 interview, and therefore suppression of statements made that day was not warranted on the basis that Petitioner was not read his *Miranda* rights. ECF No. 68 at 15. As for voluntariness, Judge Payson rejected Petitioner's argument. *Id.* at 16. Specifically, Judge Payson found that the audio recording of the interview demonstrated that Petitioner was coherent, did not exhibit any evident mental dysfunction, and seemingly understood the agents' questions and statements during the interview. *Id.* She also found that the record established that Petitioner lived independently at the time of his June 13 interaction with the agents and had earned a degree in mechanical engineering from the

2

Rochester Institute of Technology. *Id.* at 16–17. Further, Judge Payson found that while law enforcement attempted to downplay the significance of the interview, the statements made by law enforcement, even in combination with Petitioner's allegations of mental health issues, were not sufficiently coercive as to render Petitioner's waiver or statements involuntary. *Id.* at 17.

As for Petitioner's argument that his consent to search the laptop was not voluntary, Judge Payson also rejected that argument. *Id.* at 25. Judge Payson explained that the interview was not significantly intimidating and that investigators made no threats or promises to Petitioner to induce him to speak or to provide his consent. *Id.* at 25–26. Additionally, she found that Petitioner was an adult living independently who appeared coherent and responsive throughout the interview. *Id.* at 26. Finally, she reiterated that in viewing the totality of the circumstances, the investigators' tactics were not sufficiently coercive or deceptive so as to render Petitioner's consent to search the laptop involuntary. *Id.* at 27. This Court adopted Judge Payson's Report and Recommendation in full. ECF No. 76.

After pretrial motions were decided, but before the matter proceeded to trial, Petitioner retained new counsel. ECF No. 126. Petitioner was then represented by Attorney Frank Ciardi and Attorney Michael Witmer. *Id.* Prior to trial, Mr. Ciardi and Mr. Witmer moved to renew motions to suppress and to reopen the suppression hearing to allow for the introduction of testimony on the effects of autism in relationship to voluntariness and Petitioner's ability to waive his constitutional rights. ECF No. 133. Those motions were denied. ECF No. 138.

On November 16, 2020, Petitioner's trial began. ECF No. 139. Carlton Turner, a Rochester police officer assigned to the FBI's Child Exploitation Task Force, testified at the trial. TT: 53.[1] As relevant here, Turner testified that he personally logged onto the RoundUp eMule[2] network

---

[1] Citations to "TT:" refer to the original pagination of the trial transcript.

[2] "RoundUp eMule is law enforcement software that operates automatically as a network of computers which surveils the eDonkey2000 peer-to-peer network for activity related to child pornography, attempts to download the same, and

and downloaded a video file by acting like a "normal user." TT: 72. Turner testified that the program permits "a single source download" that allows the user to "download[] a file directly from another user within the network rather than getting pieces of that same file from multiple users within that network." TT: 68–69. Turner testified that on March 13, 2018, he searched for child pornography undercover by focusing his search to Monroe County, which allowed Turner to download a file that contained child pornography from an IP address associated with the physical address of Petitioner's mother. TT: 72–73, 75, 85–86. Turner identified the video he downloaded as Government's Exhibit 3 and testified that it was an approximately two second video clip of the 2009 Gracel series, a child pornography series. TT: 76–77, 80. Additionally, Turner explained that RoundUp eMule penalizes law enforcement accounts because those accounts do not share downloads with other users. TT: 71. He also explained that the short length of the video he downloaded was consistent with his testimony about the inability to download full files if an account is not sharing files with other users. TT: 71, 82.

After the five-day trial, Petitioner was convicted on all three counts. ECF No. 144. On February 18, 2021, Petitioner was sentenced to 72 months in the custody of the Bureau of Prisons and a 10-year term of supervised release to follow. ECF No. 155. Petitioner appealed his convictions, which were upheld by the Second Circuit. ECF No. 178. Petitioner now seeks to vacate his convictions under 28 U.S.C. § 2255. ECF No. 236.

## LEGAL STANDARD

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the

---

logs those activities." ECF No. 236-2 ¶ 5; TT: 145. "eDonkey is an internet communications protocol that defines how computers can share files with other computers. It is referred to as a peer-to-peer network because the files are shared with other peers. Rather than a central server storing a file that can be downloaded by a user, a file is shared by a peer computer and others can download it from the peer . . . ." ECF No. 236-2 ¶ 6; TT: 144.

Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). While the remedy provided by Section 2255 is "comprehensive, it does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, relief "is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Section 2255 provides that "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon." 28 U.S.C. § 2255(b). However, "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal." *Armienti v. United States*, 234 F.3d 820, 822–23 (2d Cir. 2000) (quoting Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts) (alteration in original).

## DISCUSSION

Petitioner's motion raises seven claims, arguing that his convictions must be set aside because: (1) they were obtained using materially false testimony related to the file download; (2) they were obtained using materially false testimony related to RoundUp eMule; (3) Petitioner received ineffective assistance of counsel related to his suppression motion and hearing; (4) Petitioner received ineffective assistance of counsel at trial related to the voluntariness of statements and consent given by Petitioner to investigators; (5) Petitioner received ineffective

5

assistance of counsel at trial related to the use of the log file and interview in cross examination; (6) Petitioner received ineffective assistance of counsel due to a failure to investigate; and (7) cumulative error. ECF No. 236-5. The Court discusses each claim in turn.

## I.    Ground One

First, Petitioner argues that: (1) testimony from Turner that the download of the video clip was incomplete due to a network penalty was materially false; (2) the government knew or should have known that this testimony was materially false; and (3) there is a reasonable likelihood that Turner's materially false testimony altered the outcome of his trial. ECF No. 236-5 at 3–4. Specifically, Petitioner takes issue with Turner's testimony that Turner only received a fragment of a larger child porn video due to a network penalty imposed by the RoundUp eMule network that prevented law enforcement from obtaining complete downloads. *Id.* at 3. Petitioner attaches a Declaration from Terry Lahman, Petitioner's expert, who argues that the two-second file fragment was the entirety of what existed on Petitioner's computer at the time of the March 2018 download. *Id.* Petitioner argues that the "log file," which had been marked as Government's Exhibit 2, establishes that Petitioner never had the entire video file, and thus, any reference by Turner that Petitioner was in possession of a video that was longer than two seconds was materially false. *Id.* Additionally, Petitioner believes the fact that Government's Exhibit 2 was the only exhibit on the exhibit list that the government chose *not* to introduce at trial gives rise to "an inference" that the government was aware of an issue between Government's Exhibit 2 and Turner's testimony. *Id.* at 4.

Petitioner characterizes Ground One as a claim of newly discovered evidence of perjury and/or the presentation of materially false testimony. The Second Circuit has explained the analysis of this type of claim as follows:

> If newly discovered evidence indicates that testimony given at trial was perjured, the grant of a new trial depends on "the materiality of the perjury

> to the jury's verdict and the extent to which the prosecution was aware of the perjury." *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991), *cert. denied*, 508 U.S. 939, 113 S. Ct. 2414, 124 L. Ed. 2d 637 (1993). Where the prosecution knew or should have known of the perjury, a new trial is warranted if "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id*. (quoting *United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397, 49 L. Ed. 2d 342 (1976)); *see also Sanders v. Sullivan*, 863 F.2d 218, 225 (2d Cir. 1988) (question is whether the jury's verdict "might" be altered). *But see United States v. Stofsky*, 527 F.2d 237, 243 (2d Cir. 1975) (where government knowingly offers perjured testimony, new trial is "virtual[ly] automatic"). However, where the government was unaware of the perjury at the time of trial, "a new trial is warranted only if the testimony was material and 'the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.'" *Wallach*, 935 F.2d at 456 (quoting *Sanders*, 863 F.2d at 226).

*United States v. Wong*, 78 F.3d 73, 81 (2d Cir. 1996).

"In order to be granted a new trial on the ground that a witness committed perjury, the defendant must show that (i) the witness actually committed perjury; (ii) the alleged perjury was material; (iii) the government knew or should have known of the perjury at [the] time of trial; and (iv) the perjured testimony remained undisclosed during trial." *United States v. Cromitie*, 727 F.3d 194, 221 (2d Cir. 2013) (quoting *United States v. Josephberg*, 562 F.3d 478, 494 (2d Cir. 2009)). A defendant must clear a high burden to establish actual perjury:

> Federal courts have repeatedly held that, "even a direct conflict in testimony does not in itself constitute perjury." *United States v. Gambino*, 59 F.3d 353, 365 (2d Cir. 1995). As the Second Circuit has explained:
>> [a] witness commits perjury if he gives [1] *false testimony concerning a material matter* with the [2] *willful intent to provide false testimony*, as distinguished from incorrect testimony resulting from confusion[,] mistake, or faulty memory.
>
> *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001) (emphases supplied). "Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." *Id.*

*Williams v. Shanley*, No. 20-CV-688, 2023 WL 7168871, at *20 (W.D.N.Y. Oct. 31, 2023).

Here, the "materially false testimony" seems simply to be Turner's testimony that the March 2018 download was incomplete because the network imposed a penalty against law

enforcement officers seeking to access the network, and that this penalty prevented law enforcement from obtaining complete downloads, including from Petitioner's computer. ECF No. 236-1 at 9, ¶¶ 52, 59. Petitioner argues that the "March download was complete. The file was a fragment because a fragment was all that existed on the target computer at the time of the download in March 2018." *Id.* ¶ 58 (citing Lahman Decl. ¶¶ 3, 18–24). Lahman opines that his review of Government Exhibit 2 "reveals [that] the download was terminated because RoundUp eMule simply downloaded all the data the suspect computer had available at the time." ECF No. 236-2 at 9, ¶ 21. But then Lahman goes on to state that "[i]t is possible for users of the eMule software to pause downloads, or cancel them prior to their completion. It is possible that the suspect computer never completed the download of the file, especially since based on my review of the forensic evaluation of the device and the testimony, the file itself was not recovered from the device." *Id.* ¶ 22. This seems to be consistent with Respondent's theory that the download did not complete.

Lahman further states that "where a completed download was not performed by the government, and where the file was not recovered from the device, it is not possible to know whether the download was ever completed. If the filename appears in the recently used list, it does not establish that the download was completed, only that a user attempted to open the file, it is unknown if the download completed." *Id.* ¶ 23. Lahman's opinion is phrased in speculative terms. In addition, it seemingly contradicts Petitioner's argument. That is, Lahman conceded that it is "unknown" whether the download ever completed, which undermines Petitioner's unequivocal assertion that the download of the file did not, in fact, complete. Therefore, Lahman's Declaration does not establish that Turner presented false, let alone intentionally perjurious, testimony.

Even assuming for the sake of argument that Turner testified falsely, Petitioner cannot establish the "materiality" element because he cannot show "there is a 'reasonable likelihood' that the false testimony affected the judgment of the jury," *Wong*, 78 F.3d at 82, as to any of the Counts.

Petitioner has failed to show how Turner's testimony about the network penalty's interruption of the video download was material to his convictions. Whether the download was complete or incomplete and, if incomplete, for what reason, was not a question of fact the jury had to find.

As the Second Circuit explained in Petitioner's appeal related to the sufficiency of the evidence, there was ample evidence from Turner's testimony as to the network penalty to support the convictions on all three counts. As for Count One, the Second Circuit explained that Petitioner made admissions that he "used eMule and understood how it worked . . . used the term 'Gracel' to search for child pornography, and knew others could download child pornography through peer-to-peer software from his computer." *United States v. Dzionara-Norsen*, No. 21-454-CR, 2024 WL 191803, at *4 (2d Cir. Jan. 18, 2024). Additionally, the Second Circuit explained that Turner testified that he downloaded the pornographic video clip admitted into evidence at the trial from an IP address tracked to Petitioner's mother's residence. *Id.* Whether or not the video clip was a fragment or the full video is irrelevant because only the two-second video clip that was downloaded was presented to the jury and that clip contained child pornography.

As for Counts Two and Three, the Second Circuit found that:

> [Petitioner] stated in an interview that he viewed child pornography out of "curiosity," App'x at 42, and that he would "download [child pornography] . . . and just look at it and delete it," *id.* at 41. He also stated that his laptop did not contain any child pornography because he "might have deleted it." *Id.* at 45. His stated habits were corroborated by the forensic examination of his laptop revealing that he had opened, accessed, and viewed files with names suggesting that the contents thereof were pornographic in nature and involved children. He estimated viewing about 200 videos or images of child pornography in his lifetime.

*Id.* (second alteration and ellipsis in original). Where "[a]mple" and "independent" evidence, apart from the perjured testimony, supports a defendant's convictions, reversal is not warranted even where the government "knowingly introduced the perjured testimony," *Wong*, 78 F.3d at 82. Petitioner therefore fails to establish the "materiality" element.

For these reasons, Petitioner's motion to vacate on Ground One is denied.

## II.    Ground Two

Second, Petitioner argues that: (1) testimony from Turner that he personally downloaded the video at issue was materially false; (2) that the government knew or should have known that this testimony was materially false; and (3) there is a reasonable likelihood that Turner's materially false testimony altered the outcome of his trial. ECF No. 236-5 at 7–8. Specifically, Petitioner takes issue with Turner's testimony that he personally downloaded the file fragment in March 2018 when acting as a "normal user" on the eDonkey2000 network. *Id.* at 7. Attaching Lahman's Declaration, Petitioner argues that because Roundup eMule is an autonomous surveillance operation that "bypass[es] search restrictions imposed on a 'normal user' of the eDonkey2000 network," Turner's testimony that he directly downloaded the file "was all made up." *Id*. Petitioner further argues that Turner's materially false testimony is supported by the circumstances of the download including the time it took to download the file and the testimony of Special Agent Barry Couch, Turner's partner, who stated that the government has "systems that run constantly on the internet." *Id.* at 7–8.

As discussed above, a new trial is warranted if the defendant meets the high burden of establishing that "(i) the witness actually committed perjury; (ii) the alleged perjury was material; (iii) the government knew or should have known of the perjury at [the] time of trial; and (iv) the perjured testimony remained undisclosed during trial." *Cromitie*, 727 F.3d at 221 (citation omitted); *Shanley*, 2023 WL 7168871, at *20. Here, the "materially false testimony" Petitioner accuses Turner of is his testimony that he directly downloaded the file when it was in fact RoundUp eMule that downloaded the file.

Initially, Petitioner cannot establish the elements that Turner provided "materially false testimony." Petitioner argues that "[a]t a minimum, [RoundUp eMule] autonomously searches for

10

files that it . . . believes are child pornography, downloads those files (or, in this case, fragments of those files), and logs the results in a law enforcement database for later review by officers." ECF No. 236-5 at 7. Petitioner thus claims that it was materially false for Turner to testify that he "sat down at his computer, he logged on to the network like a normal user, he downloaded a file, he saw the IP address of the computer that he downloaded the file from, and he saw the file he downloaded." *Id.*

During the trial, Turner did testify that he personally logged onto the network and downloaded a video file by acting like a "normal user." TT: 72. Turner also testified that the program permits "a single source download" that allows the user to "download[] a file directly from another user within the network rather than getting pieces of that same file from multiple users within that network." TT: 68–69. Turner testified that on March 13, 2018, he searched for child pornography undercover by focusing his search to Monroe County, which allowed Turner to download a file that contained child pornography from an IP address associated with the physical address of Petitioner's mother. TT: 72–73, 75, 85–86.

Turner's testimony is corroborated by Lahman who opined: "It is reported by the government that RoundUp eMule can perform targeted downloads of suspected files involving child exploitation by limiting the downloads to a 'single source,' that is, instead of downloading a file from multiple users connected to the eDonkey2000 network who are sharing a certain file, the software limits the download to a single computer. . . . These reports are consistent with the testimony I reviewed in this case." ECF No. 236-2 at 8, ¶¶ 14, 16. Although Lahman stated that it was his "opinion that the download in this case was automated," he also conceded that "it may be possible for a law enforcement officer to manually direct a download." *Id.* at 11. Therefore, the record does not establish that Turner presented false, let alone intentionally perjurious, testimony.

11

Further, as to this ground, Petitioner does not even offer a theory for how the government would have become aware of the alleged perjured testimony at trial.

In any event, as discussed more fully above, *see* Section I, *supra*, there was ample evidence apart from Turner's testimony about downloading the video to support Petitioner's convictions on Counts One, Two, and Three. *See Dzionara-Norsen*, 2024 WL 191803, at *4. Because ample and independent evidence supports Petitioner's convictions, reversal is not warranted even if Respondent knowingly introduced the perjured testimony. *See Wong*, 78 F.3d at 82.

For these reasons, Petitioner's motion to vacate on Ground Two is denied.

### III.     Grounds Three, Four, Five, and Six

In Grounds Three, Four, Five, and Six, Petitioner makes four distinct ineffective assistance of counsel claims. In assessing ineffective assistance of counsel claims, the Second Circuit has repeatedly observed that:

> [a] defendant challenging his conviction and sentence on the basis of ineffective assistance of counsel bears a heavy burden. . . . In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court adopted a strong presumption that trial counsel provides effective assistance. To overcome this presumption, a defendant must show both (1) "deficient performance," that is, that his trial counsel's performance "fell below an objective standard of reasonableness" under "prevailing professional norms," *id.* at 688 . . .; and (2) "prejudice," that is, that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

*United States v. Diaz*, 176 F.3d 52, 112–13 (2d Cir. 1999).

As to the first *Strickland* prong, "constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). "The performance inquiry examines the reasonableness of trial counsel's actions under 'all circumstances' from the perspective of trial counsel at the time." *Id.* at 319 (quoting *Rompilla v.*

*Beard*, 545 U.S. 374, 408 (2005) (internal citation omitted)). "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. A claim for ineffective assistance of counsel "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (citations omitted). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

The Court addresses each of Petitioner's ineffective assistance of counsel claims in turn.

### a.  Ground Three

Petitioner's third argument is that his convictions should be vacated because he received ineffective assistance of counsel on his suppression motion and at his suppression hearing. ECF No. 235-5 at 9. Specifically, Petitioner argues that his attorney at the time, Mr. Pilato, provided representation that fell below an objective standard of reasonableness because he: (1) never mounted an argument that Petitioner's statements were involuntary; (2) failed to have Petitioner testify at the hearing to establish his subjective understanding of the interrogation; and (3) failed to present evidence of Petitioner's Autism Spectrum Disorder ("ASD"). *Id.* at 12–13.

As for Petitioner's argument that Mr. Pilato never mounted an argument that Petitioner's statements were involuntary, that argument is simply false. At the suppression hearing, Judge Payson asked Mr. Pilato, "[A]re you also making an alternative argument that the statements were involuntary, within the meaning of the Fifth Amendment, apart from a Miranda violation[?]." ECF No. 73 at 6. Mr. Pilato ultimately responded, "I did it sort of as part and parcel of the custodial interrogation, but I do -- I am putting forth a diminished capacity argument, based on his mental

13

health issues." *Id.* at 7. Therefore, Mr. Pilato did in fact mount an argument that Petitioner's statements were involuntary. To the extent that Petitioner is arguing that Mr. Pilato's argument was in some manner insufficient, that argument also fails because Petitioner has failed to show any prejudice resulting from it. Judge Payson extensively discussed whether the challenged statements were involuntary and this Court adopted her findings. ECF Nos. 68, 76. Indeed, Petitioner concedes that based on the record it had before it, the Court's determination that the statements were not involuntary was correct. ECF No. 236-5 at 10. Thus, the Court concludes that there is no merit to this argument.

As for Petitioner's arguments that Mr. Pilato provided ineffective assistance of counsel because he failed to have Petitioner testify at the hearing to establish his subjective understanding of the interrogation and failed to present evidence of Petitioner's ASD, the Court is also unpersuaded by these arguments. Even if the Court were to assume that Mr. Pilato's failure to have Petitioner testify and to present evidence of Petitioner's ASD fell below an objective standard of reasonableness, Petitioner's arguments fail because he has failed to demonstrate any prejudice resulting from these alleged errors.

Petitioner argues that he was prejudiced by Mr. Pilato's alleged failures because he believes that the results of the suppression hearing would have been different but for these failures. ECF No. 236-5 at 11. Specifically, Petitioner appears to argue that Petitioner's testimony and diagnosis would have demonstrated that "[Petitioner's] ASD, his level of social and emotional functioning, the deceptive tactics employed by law enforcement, and the fact that law enforcement was aware that [Petitioner] had significant mental health issues" rendered Petitioner's statements involuntary because he was tricked by investigators into making a confession. *Id.* at 17. Additionally, he argues that his consent to search his laptop was similarly involuntary as well as his statement on June 14, 2018, because they were the product of the June 13 interview. *Id.* Therefore, Petitioner argues that

had Petitioner testified as to his subjective understanding and had counsel presented evidence of Petitioner's ASD, the Court would have suppressed Petitioner's statements and evidence obtained from the laptop, and Petitioner likely would not have been convicted. *Id.* The Court disagrees.

To determine whether a statement was voluntary, "[a] court must still make specific findings that under the totality of the circumstances . . . the defendant's will was overborne by the police conduct." *United States v. Haak*, 884 F.3d 400, 409 (2d Cir. 2018) (internal quotation omitted). Specifically, the court must assess: "(1) the characteristics of the accused, (2) the conditions of [the] interrogation, and (3) the conduct of law enforcement officials." *Id.* (quoting *Green v. Scully*, 850 F.2d 894, 901–02 (2d Cir. 1988), *cert. denied*, 488 U.S. 945 (1988)). The inquiry is an objective one. *See United States v. Ortiz*, 943 F. Supp. 2d 447, 456 (S.D.N.Y. 2013) (in determining whether a confession is voluntary, "the inquiry into voluntariness is objective . . . [and] based on the totality of the circumstances"); *United States v. McFarland*, 424 F. Supp. 2d 427, 426 (N.D.N.Y. 2006) ("if the police engage in objective behavior constituting impermissible trickery, deceit or coercion, that behavior may undermine a suspect's essential knowledge of his rights and the effect of abandoning [them][;] . . . a defendant's subjective reasons for waiving his *Miranda* rights are irrelevant").

When deciding the suppression motion, the Court concluded that the investigator's misleading statements regarding the significance of the interview and Petitioner's mental health status weighed in favor of Petitioner's argument that the statements were involuntary. ECF No. 76 at 13. However, the Court ultimately concluded that those factors were far outweighed by the myriad factors supporting the contrary conclusion. *Id.* Those factors included that Petitioner was not in custody, that the interview was brief, that the parties maintained a conversational tone throughout, and that investigators wore plain clothes, did not make threats or promises, and did not display handcuffs, badges, or weapons. *Id.* Petitioner's arguments related to his subjective

15

understanding and ASD do not change this analysis and therefore, Petitioner cannot show prejudice. [3]

As for Petitioner's argument related to his subjective understanding of the interrogation, because the inquiry into voluntariness is an objective analysis, Petitioner's subjective understanding is irrelevant to the Court's analysis. As for his argument related to counsel's failure to provide evidence of Petitioner's ASD, "a defendant's mental condition, by itself and apart from its relation to official coercion" does not "dispose of the inquiry into constitutional 'voluntariness.'" *Colorado v. Connelly*, 479 U.S. 157, 164–65, 167 (1986) ("while mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry"[;] . . . rather, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); *see also United States v. Raymer*, 876 F.2d 383, 386 (5th Cir. 1989) ("[t]he relevant test . . . focuses . . . on the presence or absence of police coercion"), *cert. denied*, 493 U.S. 870 (1989). "In other words, the police must somehow overreach by exploiting a weakness or condition known to exist." *United States v. Robertson*, 19 F.3d 1318, 1321 (10th Cir. 1994), *cert. denied*, 513 U.S. 906 (1994); *Miller v. Dugger*, 838 F.2d 1530, 1537 (11th Cir. 1988) ("*Connelly* makes clear that even the interrogators' knowledge that a suspect may have mental problems does not make the suspect's statement involuntary unless '[t]he police exploited this weakness *with coercive tactics*'") (alterations in original) (quoting *Connelly*, 479 U.S. at 165), *cert. denied*, 486 U.S. 1061 (1988).

---

[3] To the extent that Petitioner may be arguing that other mental health concerns rendered Petitioner's statements involuntary, such issues were reached by the Court in its decision adopting the Report and Recommendation. ECF No. 76. Because Petitioner does not provide any new evidence or arguments in relation to those mental health concerns, the Court's determination that those mental health concerns were insufficient to render Petitioner's statements involuntary remains unchanged. *See id.* at 13.

16

Thus, for Petitioner to show prejudice resulting from counsel's failure to provide evidence of Petitioner's ASD in the suppression motion and hearing, he would need to demonstrate that suppression was warranted because investigators knew of Petitioner's ASD and exploited it with coercive tactics. Petitioner argues that individuals with ASD are more susceptible to coercive law enforcement interrogation techniques and argues that the investigators used deceptive tactics to convince Petitioner to make an uncounseled and involuntary confession. ECF No. 236-5 at 14, 17. Nevertheless, Petitioner makes no argument that investigators were aware that Petitioner had ASD and used deceptive tactics to exploit it. Indeed, Petitioner alleges that he was not diagnosed with ASD until July 2019, more than a year after he was interrogated by investigators in June 2018. *Id.* at 9. As such, investigators could not have possibly "overreach[ed] by exploiting a weakness or condition known to exist."[4] *Robertson*, 19 F.3d at 1321. Consequently, Petitioner has failed to demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," and the Court rejects Petitioner's argument that he received ineffective assistance of counsel on his suppression motion and at his suppression hearing. *Strickland*, 466 U.S. at 694.

For these reasons, Petitioner's motion to vacate Ground Three is denied.

**b. Ground Four**

Petitioner's fourth argument is that Petitioner received ineffective assistance of counsel because his attorneys, Mr. Pilato and then later Mr. Ciardi and Mr. Witmer, failed to raise the argument that Petitioner's statements were involuntary directly to the jury. ECF No. 236-5 at 18.

---

[4] It is unclear to what extent Petitioner is challenging the voluntariness of his consent to search his laptop. It appears that he is arguing that the consent to search the laptop was involuntary because it was the product of the June 13, 2018 interview. *See* ECF No. 236-5 at 17. However, even if Petitioner were challenging the voluntariness of the consent separately, the Court would reject that argument. Petitioner's subjective understanding and subsequent ASD diagnosis do not alter the Court's conclusion that under the totality of the circumstances, the investigator's tactics were not sufficiently coercive or deceptive so as to deprive Petitioner of his "ability to make a fair assessment of the need to surrender his privacy" and to render his consent involuntary. ECF No. 68 at 27 (citing *United States v. Funds in the Amount of $830,000 in United States Currency*, No. 18 C 01537, 2019 WL 95169, at *8 (N.D. Ill. Jan. 3, 2019)).

17

Specifically, he argues that Mr. Pilato failed to prepare experts who could establish Petitioner's ASD diagnosis and the impact that the diagnosis had on the voluntariness of Petitioner's statements on June 13 and 14, 2018. *Id.* Additionally, he argues that Mr. Ciardi and Mr. Witmer failed to notice an expert who could establish Petitioner's ASD or to offer an opinion on what Petitioner's ASD meant with respect to the voluntariness of his statements. *Id.* at 19. Petitioner argues that these errors deprived him of the opportunity to make the argument directly to the jury that his statements were involuntary. *Id.*

As an initial matter, the Court disagrees with Petitioner's characterization that Mr. Pilato, Mr. Ciardi, and Mr. Witmer failed to notice an expert who could establish Petitioner's ASD or offer an opinion on what Petitioner's ASD meant with respect to the voluntariness of his statements. Indeed, Mr. Pilato, Mr. Ciardi, and Mr. Witmer attempted to introduce the following expert witnesses: (1) R. Douglas Alling, a medical professional who treated Petitioner for ten years, who would have testified that Petitioner is autistic and took prescribed medications that impacted his state of mind, ECF No. 98 at 1; (2) Frank J. Salamone, Psy. D., who would have testified that he diagnosed Petitioner with ASD, *id.*; and (3) Dennis Debbaudt, who would have testified that people with ASD may be prone "to mak[ing] misleading statements or false confession[s]," ECF No. 133 ¶ 51. Petitioner cites no legal authority to suggest that counsel performs deficiently where he attempts to introduce expert testimony, but that testimony is ultimately excluded.

In any event, even if the Court were to assume that counsel acted deficiently, it is well settled that "[f]ailure to make a meritless argument does not amount to ineffective assistance." *United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d Cir. 2008) (alteration in original) (additional citations omitted). As the Court explained above, *see* Section III, subpart a, *supra*, there is no merit to the argument that Petitioner's subsequent diagnosis of ASD rendered his statements involuntary.

18

As such, counsel's failure to raise the issue of the voluntariness of the statements to the jury does not constitute ineffective assistance of counsel.

For these reasons, Petitioner's motion to vacate Ground Four is denied.

### c. Ground Five

Petitioner's fifth argument is that he received ineffective assistance of counsel because his attorneys did not use the log file in their cross examination of Turner at trial. ECF No. 236-5 at 20. Petitioner argues that such cross examination was necessary to show that Petitioner "did not have the completed file," and that "by not reading the log file, and by not paying attention to the June 13 interview," Petitioner's trial attorneys "could not, and did not" effectively cross examine Turner. *Id.*

"'[D]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are [ ] strategic in nature.'" *Ramirez v. United States*, 898 F. Supp. 2d 659, 666 (S.D.N.Y. 2012) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)). For a cross examination to be constitutionally deficient, a court must find that "'there is no strategic or tactical justification for the course taken.'" *Eze v. Senkowski*, 321 F.3d 110, 127 (2d Cir. 2003) (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)). Here, Petitioner argues that there was no strategic reason to forgo the opportunity to use the log file during the cross examination of Turner because it would have shown that: (1) the government's case was not true; and (2) a key government witness was not credible. ECF No. 236-5 at 20. The Court rejects this argument because it is premised on Petitioner's unsupported assertions that the log file at issue proved that Petitioner never had the completed file on his computer and that the log file demonstrates that Turner's testimony was false.

As discussed more fully above, *see* Section I, *supra*, both assertions are meritless. Petitioner's expert conceded that the log file showed that it was "unknown" whether the download

19

was ever completed on Petitioner's computer, undermining Petitioner's assertion that Petitioner never had the "completed file." ECF No. 236-2 at 9, ¶ 23. Indeed, at other points in his motion, Petitioner seems to also concede that the log file does not definitively establish that Petitioner never had the completed file on his computer, arguing that "it was *possible* that [Petitioner] never had the file that government argued he knowingly distributed . . . ." ECF No. 236-5 at 20 (emphasis added). Thus, it is simply untrue that the log file demonstrates that the government's case was not true and that Turner was not a credible witness because he testified falsely about the file download not being complete. As such, Petitioner's claim that his trial attorneys provided ineffective assistance on cross examination by not using the log file fails because Petitioner has not shown there was no strategic or tactical decision not to use the log file, that trial counsel's cross examination trial strategy was outside of professionally competent assistance, or that there was a reasonable probability that but for trial counsel's cross examination strategy, there would have been a different outcome. *See Arevalo v. Artus*, 104 F. Supp. 3d 257, 265 (E.D.N.Y. 2015).

For these reasons, Petitioner's motion to vacate Ground Five is denied.

### d. Ground Six

Petitioner's sixth argument is that Petitioner's attorneys provided ineffective assistance of counsel by failing to investigate the operation of RoundUp eMule and the severity of Petitioner's ASD during pretrial negotiations. ECF No. 236-5 at 22. "While failure to conduct adequate pretrial investigation may serve as the basis for a claim of ineffective assistance of counsel under *Strickland*, a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation." *Wood v. Artus*, No. 15-CV-4602, 2020 WL 3256848, at *9 (E.D.N.Y. June 15, 2020) (internal citation omitted). "To the contrary, a petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a

comprehensive showing as to what the investigation would have produced." *Id.* (internal quotation marks and brackets omitted). A petitioner's failure to disclose what a better investigation would have revealed is fatal to his claim. *See Sica v. United States*, No. 18-CV-8959, 2019 WL 6341300, at *3 (S.D.N.Y. Nov. 26, 2019).

Here, as for the alleged failure to investigate the operation of RoundUp eMule, Petitioner argues that had Petitioner's attorneys investigated the operation of RoundUp eMule they may have undermined Turner's testimony that he was personally involved in the procurement of the video clip, which would have allowed them to potentially challenge the foundation that was laid for admissibility of the video clip. ECF No. 236-5 at 21. Additionally, Petitioner argues that had Petitioner's attorneys investigated the log file, they may have been able to preclude the video clip from being introduced as evidence. *Id.* at 22. Petitioner also lists a number of other evidentiary and Constitutional challenges that Petitioner may have been able to raise if the investigation uncovered other unknown information. *Id.* at 22–23. Such speculation is insufficient for Petitioner to meet his burden of providing the Court "sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Wood*, 2020 WL 3256848, at *9.[5]

As for the alleged failure to investigate Petitioner's ASD, Petitioner argues that had a further investigation of Petitioner's ASD occurred during pretrial negotiations, then Petitioner may

---

[5] Petitioner also requests discovery because the "viability of some aspects of Ground Six necessitates discovery from the government to evaluate prejudice." ECF No. 236-5 at 24. A habeas petitioner is not entitled to discovery "as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing Section 2255 Proceedings grants the court discretion to authorize discovery based on a showing of "good cause." *Id.* at 908–09. "In order to show good cause, a petitioner must present specific allegations that give the Court reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Pizzuti v. United States*, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011) (quotation omitted). Where a petitioner is seeking documents "merely to determine whether the requested items contain any grounds that might support his petition, and not because the documents actually advance his claims of error," discovery is rightfully denied. *Ruine v. Walsh*, No. 00 CIV. 3798, 2005 WL 1668855, at *6 (S.D.N.Y. July 14, 2005) (quotation omitted). Because Petitioner seeks discovery simply to evaluate prejudice and not because he has identified any particular document that would actually advance his claims of error, his request for discovery is denied.

21

have been offered a more desirable plea deal from the government. ECF No. 236-5 at 23.[6] Again, the Court rejects this argument because it is nothing more than speculation. *See Mocombe v. United States*, No. 02 Civ. 1846, 2005 WL 730566, at *3 (S.D.N.Y. Mar. 31, 2005) ("An attorney's failure to investigate is considered reasonable unless there is some indication that the investigation would have changed the result of the proceeding. . . . Mere speculation that the investigation may lead to a different outcome is insufficient.") (citations omitted).

For these reasons, Petitioner's motion to vacate Ground Six is denied.

## IV.    Ground Seven

Finally, Petitioner argues that the cumulative effect of the foregoing alleged errors necessitates that his convictions be vacated because even if this Court "concludes that no one error standing alone was sufficient to have violated [Petitioner's] rights, their combined effect was to operate to deny [Petitioner] his right to a fair trial, his right to present a defense, his right to effective assistance of counsel, and his right to be free from being convicted on the basis of false testimony in violation of his Due Process rights." ECF No. 236-5 at 24–25. As an initial matter, Petitioner's argument is conclusory and vague. It is unclear whether Petitioner is arguing that the cumulative effect of errors exists from the accumulation of all six grounds or only his ineffective assistance of counsel arguments. Either way, Petitioner's argument is without merit.

"Habeas relief may be justified based on the cumulative effect of errors that, standing alone, would not warrant the granting of a new trial." *Porter v. United States*, No. 08-CV-1497, 2008 WL 5451011, at *1 n.1 (E.D.N.Y. Dec. 31, 2008) (citing *United States v. Lumpkin*, 192 F.3d 280, 290

---

[6] Petitioner does not dispute that he was offered a plea deal by the Government but argues that he should have been offered a better agreement due to his ASD. ECF No. 236-5 at 23. Specifically, he takes issue with the agreement offered by the Government prior to trial because as a part of that plea agreement, Petitioner would have had to plead guilty to an offense that would have required Petitioner to register as a sex offender. *See id.* Petitioner argues that had his attorney investigated his ASD diagnosis further and shared that diagnosis with the Government, then he may have been offered a plea agreement where he was not required to register as a sex offender. *Id.* It is pure speculation that Petitioner would have been offered a plea agreement that would not have required him to register as a sex offender had his attorney further investigated his ASD diagnosis.

(2d Cir. 1999)). However, "only *errors* committed by the trial court may be considered in such an analysis." *Collins v. Scully*, 878 F. Supp. 452, 460 (E.D.N.Y. 1995) (emphasis in original); *see also Sanders v. Sullivan*, 701 F. Supp. 1008, 1013 (S.D.N.Y. 1988) ("The cumulative-error rule, whatever form it takes, can only come into play after errors have been discovered . . . ."). In addition, in order for the cumulative effect of errors to warrant a new trial, the claimed errors must be "so prejudicial that they rendered petitioner's trial[ ] fundamentally unfair." *Collins*, 878 F. Supp. at 452 (citing *United States v. Araujo*, 539 F.2d 287, 292 (2d Cir. 1976)). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990).

Here, as discussed above, Petitioner has failed to establish that there were any errors at his trial that resulted in any prejudice. Accordingly, Petitioner's argument that his convictions should be vacated due to the cumulative effect of the errors he has identified has "no basis in fact and fail as a matter of law." *Porter*, 2008 WL 5451011, at *1 n.1; *see Lumpkin*, 192 F.3d at 290 ("the accumulation of non-errors does not warrant a new trial"); *Collins*, 878 F. Supp. at 460–61 (rejecting cumulative error claim where petitioner "failed to establish inherent or actual prejudice resulting from any of the alleged errors").

For these reasons, Petitioner's motion to vacate on Ground Seven is denied.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate (ECF No. 236) is DENIED. An evidentiary hearing is unnecessary because the "motion and the files and records of the case conclusively show that the [Petitioner] is entitled to no relief." 28 U.S.C. § 2255(b). Because Petitioner has failed to make "a substantial showing of the denial of a constitutional right," 28

23

U.S.C. § 2253(c)(2), a certificate of appealability is DENIED. The Clerk of Court is directed to close the civil case associated with the petition (Case No. 25-CV-6617-FPG).

IT IS SO ORDERED.

Dated: June 4, 2026
   Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

24